THE FIRST NATIONAL BANK OF MARQUETTE v. JULIA A. HANSCOM.

*Married woman—Liability upon guaranty of note—Principal and agent.*

A wife, to whom her husband had assigned a non-negotiable note, at his request, and without consideration, guaranteed the payment of the note to bearer, and delivered it to her husband, to be used by him in the payment of his own debts. The husband discounted the note at a bank, upon the representation that his wife was pecuniarily responsible and that he desired to use the proceeds of the note for his own purposes. He paid a draft and an account which the bank held against him for collection, and used the remainder of the money, except $100, which he deposited with the bank to his wife's credit, in the payment of his debts. And it is held in a suit by the bank upon the guaranty of payment that, if any inference of agency could be drawn from the possession of the note by the husband, it was repelled by his proposed application of the proceeds, made known to the bank officers before the discount; and that the bank cannot say that the note was discounted for the wife's benefit.[1]

Error to Marquette. (Stone, J.) Argued January 11, 1895. Decided February 12, 1895.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Irving D. Hanscom,* for appellant.

*J. E. Ball (Dan H. Ball,* of counsel), for plaintiff.

McGRATH, C. J. This suit is brought against Julia A.

---

[1] For cases bearing upon the question of the liability of married women upon their general contracts, see *Mosher v. Kittle,* 101 Mich. 345, and note; upon promissory notes, *O'Donnell v. Bray,* 99 Mich. 534, and note.

Hanscom, the wife of I. D. Hanscom, on the following instrument:

"MARQUETTE, Feb. 22, 1893.
"Due I. D. Hanscom from me $400, payable $200 six months after date, and $200 seven months after date; value received.    D. H. BALL."

Indorsed on the back of said instrument is the following:

"MARQUETTE, Feb. 22, 1893.
"I hereby assign all my interest in the within to Julia. A. Hanscom, for value received.
"IRVING D. HANSCOM."

"April 5, 1893.
"I hereby guarantee the payment of the within, when due, to the bearer.    JULIA A. HANSCOM."

The testimony of I. D. Hanscom was as follows:

"I had indorsed this note to my wife on the same day I received it. On the 5th day of April—the date of that guaranty—I went to the secretary, and took the note out of the drawer where it was, and wrote that guaranty upon the back. I then called my wife, and said to her: 'I have got to have some money. I am dead broke, and I have got some bills I have to pay. I wish you would sign that.' I said, 'That is Mr. Ball's note which I indorsed to you.' She says, 'Where shall I sign?' I pointed with my finger underneath the guaranty which I had written, and I said, 'Sign there.' She signed it, and I took it, and put it in my pocket, and she went to her work up stairs, and I went down to the bank, and got the money on it. At the bank there was a bill against me and a draft. The bill was for pew rent in St. Paul's church, amounting to $45. Mr. Towar was treasurer, or at least making the collections. I think he was treasurer of St. Paul's society, and he had sent me notice that he would like to have it paid. I told him the note was all I had to do it with. If he would cash it, I would pay the $45. That I had a little draft also that I wanted to pay, and I was in need of some money, and I wanted to get it cashed. * * * Mr. Jennison, the cashier, paid me the money, deducting the amount of the little draft there on me, and this $45 was taken out; and I directed $100 to be placed on my wife's bank account. She had kept a

bank account. I had no bank account in town at that time. And I didn't need all the money, and I said he could place $100 to the credit of Mrs. Hanscom, my wife. I went away, and used the money, and paid the bills, as far as it would go."

The cashier of the bank testified that I. D. Hanscom came to him, and offered the paper for discount, stating that his wife was worth about $15,000 in her own name; that witness referred Hanscom to Mr. Towar; that Hanscom repeated what he had said about his wife's financial responsibility to Towar; that Towar objected to the form of the paper,—to the fact that it was not a negotiable instrument, but was payable to himself only. Hanscom said that he was aware of that fact, but he would like to have the money very much, and, if Mr. Towar would accommodate him, he would be obliged to him; "and Mr. Towar eventually handed it to me, with instructions to discount it for him."

The court instructed the jury as follows:

"It is undisputed in this case that Mrs. Hanscom was at this time a married woman. This note had been transferred to her, and she was the owner of it, down to the time, at least, when she signed this guaranty upon it. This action is brought upon this guaranty of payment. If she, in this act of guaranteeing of payment, transferred that note back to her husband, it not being for the benefit of her estate, and she receiving no benefit from it, I am satisfied that she is not liable upon her guaranty of payment, under the law of this State relating to married women. There seems to have been no consideration moving to her for it, and it was a suretyship. When she placed her name there, she said, in law, 'If the maker of this note, D. H. Ball, does not pay it, I will.' That is in the nature of a guaranty or suretyship. And a married woman cannot make such a contract as that, to be binding upon her, unless it is with reference to her own matters and property. I submit to you the question, gentlemen, as one of fact, as to whether what was done with this note by Mrs. Hanscom at the time she signed this guaranty, and he went to the bank with it, and there negotiated it, and received the

money on it,—what was done there at the bank in connection with the disposition of the proceeds,—as to whether there was an agency, whether the relation of principal and agent existed between her and her husband. Did Mr. Hanscom do this business for her, and receive the proceeds, as her agent? If so, I am satisfied that she is liable; and I submit that question to you as one of fact here, for there are certain circumstances connected with it. This note was her note at this time, he says. When he took it out of the secretary, and wrote this upon it, it was her note. Did she transfer the note? Was there any meeting of the minds of the parties there by which she transferred that note to her husband in this act? If not, then it still remained hers. Did she there, by her action and conduct, expressly or tacitly say to him, 'Take this note of mine, and raise money on it,' and did he go away and do it, in pursuance of that authority? Did their minds meet upon that idea, gentlemen? If so, then there was an agency there. It seems that eventually $100 of the proceeds of this note was placed to her credit. It is contended here that that was an after-consideration, an after-thought. It is contended here on behalf of the defendant that Mr. Hanscom negotiated this note for himself, and then afterwards placed $100 of this to her credit. But you may look over all the circumstances surrounding the transaction from the time Mr. Hanscom took the note from the secretary, when, concededly, it was her property, down to the time when the money was placed to her credit—$100 of it—in the bank, and determine whether there was authority given him by her, by her acts and words and by his acts and words, by which the relationship of principal and agent arose. There could be no relation of principal and agent without the parties understood it and agreed to it. But there need not be a solemn instrument made in regard to that. You may look at all the surrounding circumstances of the case,—you may look at the indorsement, and the peculiar manner of the indorsement, and all the surroundings,—to determine that. There is no presumption from the fact that the defendant was a married woman that her husband was her agent, but that fact requires evidence. To establish the husband's agency, it should appear by a preponderance of evidence, of course. And in order for the plaintiff to recover here, you must find by a preponderance of evidence that he was her agent, and acted for her, in this transaction. If you shall say such was the

case, you will return a verdict for the plaintiff for $417, which is just the amount due on the note to-day. If not,— if there was no agency,—then, by this peculiar relation of a married woman to business transactions in this State, I advise you that she is not holden."

It is clear from this testimony that I. D. Hanscom procured this instrument, and the guaranty of its payment, from his wife, to be used by him for the payment of indebtedness due by himself; that Julia A. Hanscom guaranteed the payment of it to the bearer, and delivered it to her husband; that the husband took it to the bank, and obtained its discount, representing that he was desirous of obtaining the discount, and using the proceeds for his own purposes, in part to pay moneys due by him to the bank. I. D. Hanscom was invested with all the *indicia* of ownership of the instrument that plaintiff subsequently acquired. The guaranty was in terms to the bearer, and not to the bank. If any inference of agency could possibly be drawn from the possession of the instrument by I. D. Hanscom, that inference was repelled by the proposed appropriation of the proceeds, made known to the bank officers before the discount. The bank cannot well say, upon the state of facts here presented, that the paper was discounted for defendant's benefit.

The judgment must be reversed, and a new trial awarded.

MONTGOMERY and HOOKER, JJ., concurred. LONG and GRANT, JJ., did not sit.